## THE LOCH RANNOCH.

### HANSEN v. AMERICAN TRADING CO.

(District Court, D. Maine.   November 16, 1911.)

#### Nos. 77, 102.

1. SHIPPING (§ 39*)—CONSTRUCTION OF CHARTER PARTY—FREIGHT—MEASUREMENT OF LUMBER.

A provision in the charter of a vessel for the carriage of a cargo of lumber for the payment of freight at so much per thousand "superficial feet, board measure," is not to be taken as requiring the application, with mathematical exactness, of the unit of one foot in length, one foot in width, and one inch in thickness to the cubical contents, but only a substantial application of that unit to the lumber according to certain standard sizes by which an overrun in thickness of less than one-quar-

---

ter of an inch, in width of not more than one-half inch, and in length of a fraction of a foot, is not to be taken account of.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 141–148; Dec. Dig. § 39.*]

2. SHIPPING (§ 62*)—CHARTER—DUTY OF MASTER TO SIGN BILLS OF LADING.

If bills of lading presented by a charterer to the master after the vessel is loaded are in accordance with the contract made by the charter party, it is the duty of the master to sign them, and his refusal to do so is a breach of the charter.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 62.*]

In Admiralty. Suit by the American Trading Company against the bark Loch Rannoch, and cross-libel by J. L. Hansen, master of the Loch Rannoch. Cross-libel dismissed, and decree for libelant on original libel.

Blodgett, Jones & Burnham, for American Trading Co.

Carver, Wardner & Goodwin, for the Loch Rannoch and Hansen, claimant and cross-libelant.

HALE, District Judge. The original libel is brought to recover damages under a charter party for the refusal of the master, Hansen, to sign certain bills of lading presented to him by the charterer, and for putting to sea without signing proper bills of lading. The cross-libel is brought by J. L. Hansen, the captain, in behalf of himself and of the owners of the bark, for freight, demurrage, and for certain costs and expenses.

On August 26, 1907, the American Trading Company, the charterer, and J. L. Hansen, master of the Norwegian bark Loch Rannoch, entered into a charter party for the carriage of a cargo of lumber from Bangor, Me., to Buenos Aires. The contract provided that the charterer should furnish the vessel a full cargo of spruce and white pine lumber, and should pay for the use of the vessel during the voyage $9.25 gold per thousand superficial feet, board measure, intake survey, on lumber delivered from under and on deck.

The charter party contained the following provision:

"*Bills of lading to be signed as presented*, without *prejudice to this charter*, any difference of freight to be settled before the vessel's departure from port of loading, if in vessel's favor, in cash less insurance, if in charterer's favor, by captain's draft upon his consignee payable ten days after arrival of vessel at port of discharge."

The vessel arrived in Bangor October 18, 1907, and received on board a cargo of white pine and spruce lumber. All the spruce, and a little of the white pine, were on deck. The cargo under deck was white pine. The loading of the vessel was finished November 18, 1907. Bills of lading were presented by the charterer to the master for signature. The master refused to sign the bills of lading, alleging that they did not contain correct statements of the number of pieces constituting the cargo, nor of the number of superficial feet of lumber, board measure, in the cargo. Negotiations followe[d], with propositions and counter propositions. Finally the master sent bills

of lading to the charterer in the form he thought to be correct, and towed down stream. Thereupon the charterer filed its libel against the vessel, and caused her to be arrested. Further negotiations followed. An agreement was at last entered into. New bills of lading were prepared, signed by the captain, and delivered to the charterer. A bond of $500 was given by the captain, to answer the decree on the libel. The vessel sailed from Bangor December 12, 1907, and arrived at Buenos Aires February 13, 1908. Freight has been paid by the charterer on all the spruce, and on a certain number of feet of white pine which is alleged to have been the out-turn of the pine, according to measurements made at Buenos Aires. Subsequently, Hansen, the master, filed his cross-libel against the charterer, alleging that the ship actually carried a larger number of feet than she was paid freight for, and that therefore she should recover freight at the charter rate on the number of feet carried in excess of the number of feet on which freight was paid, that the bark was delayed at the port of lading, and that such detention was caused by the charterer; therefore the ship was entitled to demurrage, and, for the same reason, there should be a recovery for certain costs and expenses incident to the delay attending negotiations, and not included in the demurrage.

1. I first consider the issues arising under the controversy presented by the cross-libel, inasmuch as the principal question of fact is here presented. The captain alleges that when the cargo was received on board at Bangor, and the bark was ready to proceed to sea, the charterer presented to him for signature, and demanded that he should sign, certain bills of lading which did not state correctly either the number of pieces of white pine lumber, or the number of superficial feet, board measure, of such lumber, furnished by the charterer to the bark, and laden on board; but that, on the contrary, the charterer stated in the bill of lading a larger number of pieces of white pine lumber, and a much smaller number of superficial feet board measure of white pine lumber, than the true number of pieces or of superficial feet of white pine lumber laden on the bark. The captain therefore contends that the ship carried a larger number of feet than she was paid freight for; and that she should therefore recover freight, at the charter rate, on the number of feet carried in excess of the number of feet on which freight was paid. Much of the testimony is directed to the captain's claim for the recovery of freight on excess dimensions of white pine lumber consisting of at least one-eighth of an inch in thickness, and also of extra width and length. The case has been tried at great length, and with tenacity on both sides. It serves no good purpose to discuss the whole volume of testimony.

[1] After a careful examination of the whole case, I am of the opinion that by a preponderance of the evidence it has been shown that the term "superficial feet, board measure," must be held to mean, as applied to lumber of the kind in question, not a mathematical application of the unit of exactly one foot in length, one foot in width, and one inch in thickness to the cubical contents, but a substantial application of that unit to the lumber according to certain standard

sizes, by which an over-run in thickness of less than one-quarter of an inch, in width of not more than one-half inch, and in length of a fraction of a foot, is not to be taken account of. The testimony leads me to the conclusion that, when the cargo was measured out, a very small excess was shown; and I am satisfied that so small an excess of lumber as the case shows should not be taken into consideration. The cargo was furnished for the export trade at South America; it was cut and loaded with the understanding that it should be "plump and in good condition to measure out well" at the place of delivery. The whole evidence leads me to the conclusion that the captain, the libelant in the cross-libel, has not sustained his contention that the ship carried a substantially larger number of feet of lumber than she was paid for.

The claim for demurrage depends largely upon the testimony relating to the excess dimensions in the lumber, upon which I have already passed. I find that no recovery can be had upon the claim for demurrage, nor upon the other claims of the libelant. I find for the respondent in this libel. The cross-libel may be dismissed, but without costs.

2. The original libel alleges that pursuant to the charter there was loaded by the charterer on board the bark at Bangor a full cargo of spruce and white pine lumber; that on the completion of the loading, November 18, 1907, the libelant presented to the master, for his signature, bills of lading covering the cargo; that the master refused to sign these bills of lading; that on November 21st the ship left the port of loading with the cargo on board, without the master having signed the bills of lading; that the ship cleared for sea with the cargo on board, the master having refused to sign the bills of lading which properly set forth the cargo actually on board; and that the action of the master constituted a breach of the charter party. The case shows that Capt. Hansen contended that the bills of lading presented by the charterer did not set out the whole cargo, and that he therefore refused to sign them. In passing upon the cross-libel, I have already found that the captain has not sustained his contention. The whole testimony convinces me, however, that the captain took his position in good faith. He was clearly entitled to a reasonable time to get his dispute adjusted with the charterer, and whatever detention the ship suffered was occasioned by the negotiations which followed. Although the captain attempted to sail without having signed the bills of lading, which I have now found to have correctly stated the cargo, he clearly acted under an honest belief that they did not truly state the contents of the cargo. As in the case of The Mispah, Fed. Cas. No. 9,648, the master was lawfully in possession of the cargo, in pursuance of the charter party. He broke the condition of the contract which required him to sign proper bills of lading before sailing. Inasmuch as I have found that the bills of lading presented to the captain were substantially correct, and should have been signed by him, and have thus disposed of the principal controversy arising under this libel, there is no necessity for passing upon questions which might have arisen relating to the inter-

pretation which the court should give to other parts of the charter party.

[2] In the Alonzo, 1 Hask. 184, Fed. Cas. No. 257, in this district, Judge Fox has discussed the rights of the charterer and of the ship in reference to a bill of lading, and has said that this document is one which is required of the master as evidence of his contract, and, if it is in accordance with the contract, the master is bound to sign it, although it is no part of the duty of the charterer to prepare it for the master. In the case at bar, although the master acted under an honest conviction in his refusal to sign the bills of lading. I must find, under all the facts of the case, that his action in not signing them constituted a breach of the charter party. For this the libelant in the original libel is entitled to a decree. In reference to other matters for which the libelant seeks to recover on this libel I am of the opinion that it has not sustained its contention. After the libel was brought, in order to prevent further delay, the parties met with their counsel and finally came to an agreement, which was reduced to writing, by the terms of which it was provided that the master should execute certain bills of lading, and that he would give a bond for $500, with satisfactory sureties, to answer damages and costs. The charterer agreed to appear within 10 days after the master should file his cross-libel, and it also was to give bond to answer the decree of the court. Subsequently bills of lading were signed by the captain and delivered to the charterer in the form agreed upon.

Upon the original libel, the libelant is entitled to a decree. I find, however, that no damages, either from detention of the ship or from any other source, were occasioned by the fault of the respondent. The libelant is to recover only nominal damages. The decree in the original libel is to be for the libelant for $1 damages and for its costs. The cross-libel is dismissed, but without costs.